# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 17, 2005 Session

## STATE OF TENNESSEE v. BRENDA BOWERS

### Appeal from the Criminal Court for Knox County
### No. 74761   Ray L. Jenkins, Judge

---

### No. E2004-01275-CCA-R3-CD - Filed August 3, 2005

---

The appellant, Brenda Bowers, was convicted by a jury of theft of property worth less than $500 dollars.  The trial court sentenced the appellant to eleven (11) months and twenty-nine (29) days and ordered the appellant to serve six (6) months of the sentence in incarceration and the remainder of the sentence on probation.  After the denial of a motion for new trial, the appellant appealed, presenting the following issues: (1) whether the State improperly introduced evidence of a prior bad act of the appellant; (2) whether the appellant received ineffective assistance of counsel; and (3) whether the trial court correctly sentenced the appellant.  For the following reasons, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Tommy K. Hindman and J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Brenda Bowers.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General and Randall E. Nichols, District Attorney General, for the appellee, State of Tennessee.

## OPINION

Factual Background

On the night of March 9, 2001, Carl Fleming, a loss prevention officer for Wal-mart, was working at the Wal-mart located on Walker Springs Road in Knoxville, Tennessee. While walking through the automotive department, Mr. Fleming saw the appellant and her children removing empty Wal-mart bags from the appellant's purse.  Mr. Fleming radioed for Paul Thompson, another loss prevention officer, to come to the area.  Both Mr. Fleming and Mr. Thompson watched the appellant

and her children place merchandise from their shopping cart into the bags they had taken from the appellant's purse. Mr. Fleming and Mr. Thompson followed the appellant and her children throughout the store as they continued to place merchandise into the empty bags and place the bags into the shopping cart. Periodically, one of the appellant's children would run up and down the nearby aisles, as if they were looking for someone.

The appellant later walked out to the lawn and garden area of the store toward a cash register. Mr. Fleming got to the register before the appellant and purchased a pack of gum. The appellant purchased a toy, then pushed the shopping cart past the registers through a set of double glass doors onto the patio area. The appellant stopped to talk to her husband, Robert Bowers, who was working for Wal-mart as a "people greeter" in the garden center. While in the garden center, the appellant picked up several plants, placed them into the bottom of the shopping cart, gave her car keys to one of her sons and told him to take the merchandise to the car and place it in the trunk.

The appellant's son pushed the shopping cart out of the garden center towards a car parked in a parking place in front of the garden center. As he was about to open the trunk, Mr. Thompson approached the appellant's son, pulled out his badge and identified himself. Mr. Thompson, Mr. Fleming and the appellant's son walked back to the patio area, where Mr. Thompson confronted the appellant about the merchandise.

Initially, the appellant claimed that the merchandise receipt was in one of the bags. However, upon searching, the appellant could not locate a receipt. The appellant attempted to reach inside her purse to look for the receipt, but Mr. Thompson stopped her from doing so for safety reasons. The appellant became belligerent and started cursing at Mr. Thompson and Mr. Fleming. Mr. Fleming restrained the appellant by placing her arms behind her back. An off-duty police officer called the police.

When the police arrived, Mr. Fleming released the appellant from his grip. The appellant was escorted to the security office with the shopping cart. Her children sat on a bench outside the office. While in the office, Mr. Fleming and Mr. Thompson allowed the appellant to look through her purse for the merchandise receipt. She was able to produce two (2) receipts, one for a Coke and one for something that the appellant's daughter had purchased earlier that day. The purse also contained four (4) more empty Wal-mart bags as well as other merchandise that had not been paid for, including canned goods and a shirt. The total value of the merchandise in the bags and the purse was approximately $175. The appellant was then taken into custody.

On April 29, 2002, the Knox County Grand Jury indicted the appellant for theft of property valued at less than $500. A jury trial was held on February 18 and 19, 2002.

At trial, Mr. Bowers testified that he was working as a "people greeter" at Wal-Mart at the time the appellant was arrested. He stated that the appellant and four (4) of their five (5) children had stopped by the store that evening to purchase items for an upcoming trip. Mr. Bowers claimed that he told his wife to leave the cart at the gate while she looked at some flowers and that neither

he nor the appellant gave their son the car keys or told him to take the items to the car. Mr. Bowers also claimed that the appellant had an outfit in the cart that she wanted him to look at before she purchased it. Mr. Bowers remembered that another Wal-mart associate knocked over some flowers and that he and the appellant were helping pick the flowers up when their son took the merchandise to the car.

Mr. Bowers also stated that after being confronted by the loss prevention officers, he was able to locate a receipt for the items in the appellant's checkbook. However, Mr. Bowers stated that either Mr. Thompson or Mr. Fleming told him to place the receipt back into the appellant's purse, which they later took to the security room.

The appellant's son, Donald Jesse Bowers, stated that he and another individual named "Josh," took the car keys from the appellant's purse and walked to the car with the shopping cart while the appellant talked to Mr. Bowers. Jesse claimed that his sister paid for the items in the cart and that the receipt was in his mother's purse. Jesse testified that while he was on the way to load the items into the car, security officers approached him, grabbed the cart and keys and slammed him onto the trunk of the car.

The appellant's daughter, Shalona Bowers, also testified at trial. She testified that the appellant did not give her empty Wal-mart bags to fill with merchandise. Shalona claimed that while the appellant talked with Mr. Bowers, she paid for everything in the cart with either cash or a debit card. She claimed that she did not use her father's discount card for the purchase because she forgot about it.[1] However, Shalona Bowers claimed that she used the discount card earlier in the day to purchase gum and plates for herself. Shalona stated that she attempted to show the police the "lady that we went through" to purchase the items in the cart, but that the police did not allow her to do so. Shalona claimed that she placed the receipt for the items into the front pocket of the appellant's purse.

The appellant's son, Shaland Bowers, also testified at trial. He claimed that the appellant never told him to fill any empty bags with merchandise while they were at Wal-mart. Shaland admitted that a container of Midol was found in the appellant's purse, but stated that no one in the family used that item.

Joshua Bowers, the appellant's youngest child, did not remember the appellant having any empty Wal-mart bags. He testified that he bought a toy at Wal-mart that day and that his brother took the shopping cart outside while the appellant was talking to Mr. Bowers. Joshua claimed that his mother purchased some items while they were in the store and that she remained with the shopping cart the entire time they were in the store.

---

[1]According to the testimony at trial, each Wal-mart employee is given a discount card that tracks their purchases and entitles them to an employee discount. Cash register records from the day of the incident showed that Mr. Bowers's card was used two (2) times on the day of the incident for one (1) purchase totaling $3.96 and one (1) purchase totaling $5.35.

The appellant took the stand on her own behalf. She claimed that she was in Wal-mart on March 9 to purchase food, clothing and supplies for an upcoming trip. The appellant testified that she spoke with her husband and received his employee discount card to purchase school supplies for the children. The appellant remembered that Joshua purchased a toy and that she purchased hamster food. She also claimed that her daughter purchased some items for school and then later purchased some food items for the trip. The appellant stated that all of these items were in the shopping cart in new bags. According to the appellant, she explained to the cashier that she would pay for the remainder of the items in the cart with a debit card after she spoke with her husband about buying some flowers.

The appellant claimed that while she was looking at flowers and talking with her husband, her son Jesse took the shopping cart to the car. The next time she looked up, she saw Jesse with two (2) men. The appellant stated that Mr. Thompson would not allow her to show him the receipt for the merchandise, which she claimed was in her checkbook. The appellant admitted that the confrontation made her extremely upset, but that she did not attempt to hit anyone.

The appellant admitted that there were two (2) empty Wal-mart bags in her purse, but explained that she carried them in her purse for her son's dirty toys. The appellant stated that she did not remove the bags from her purse or place unpaid merchandise in them. The appellant testified that she intended to pay for everything in the cart, but also claimed that she was not aware of some of the items in the cart. The appellant also admitted that she was unable to locate a receipt for the items in the cart, but claimed that she had a receipt.

The appellant's pastor, Paul Hughes, testified that he had known the appellant all of his life. Mr. Hughes stated that he had never heard anything "derogatory" about the appellant.

Dean Weeks, another Wal-mart loss prevention officer, was called as a rebuttal witness for the State. He testified that he saw the appellant and her daughter standing in front of a shopping cart placing merchandise in Wal-mart bags on February 1, 2001, approximately one (1) month prior to the incident herein. As Mr. Weeks was watching the appellant and her daughter, a young boy walked up to him. The child ran to the appellant, pulled on her shirt and pointed to Mr. Weeks.

At the conclusion of the proof, the jury found the appellant guilty of theft of property valued at less than $500. After a sentencing hearing, the trial court sentenced the appellant to eleven (11) months and twenty-nine (29) days. The trial court ordered the appellant to serve six (6) months of the sentence and serve the remainder of the sentence on probation. The trial court denied the appellant's motion for new trial and this appeal followed. On appeal, the appellant challenges the State's introduction of evidence of a prior bad act of the appellant, her counsel as ineffective and her sentence as excessive.

<u>Analysis</u>

<u>Evidence of Prior Bad Act</u>

The appellant complains on appeal that the State improperly introduced evidence of a prior bad act. Specifically, the appellant complains that the State's attorney referred three (3) times to an incident in February of 2001 where Mr. Weeks allegedly observed the appellant taking merchandise from the same Wal-mart and placing it into empty shopping bags. The appellant only points to two (2) such instances in her brief: (1) the State referred to the February incident by "simply announc[ing] it to the jury during the appellant's testimony;" and (2) during Dean Weeks's testimony. The State argues that the appellant has waived the issue for failure to object to the entry of the evidence and, in the alternative, the evidence was admissible.

Generally, whether to admit evidence is within the sound discretion of the trial court, and its decision will not be overturned absent an abuse of discretion. <u>State v. Bigbee</u>, 885 S.W.2d 797, 807 (Tenn. 1994). However, when evidence of prior bad acts is in question the trial court must follow the procedural requirements under Rule 404(b). <u>State v. DuBose</u>, 953 S.W2d 649, 652 (Tenn. 1997). The trial court must substantially follow the outlined procedures in order for the abuse of discretion standard to be applied upon review by this Court. <u>Id.</u>

Evidence of a defendant's prior crimes, wrongs, or acts is generally not admissible to prove that he committed the crime in question. <u>See</u> Tenn. R. Evid. 404. Such evidence carries the inherent risk of the jury convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than the strength of the evidence. <u>See</u> <u>State v. Rickman</u>, 876 S.W.2d 824, 828 (Tenn. 1994). The risk is greater when the prior bad acts are similar to the crime for which the defendant is on trial. <u>See id.</u> However, Tennessee Rule of Evidence 404(b) states that evidence of prior crimes, wrongs, or acts may be admissible when it is probative of material issues other than conduct conforming with a character trait. Evidence of a defendant's criminal character is admissible to prove: (1) the use of "motive and common scheme or plan" to establish identity, (2) to establish the defendant's intent in committing the offense on trial, and (3) to "rebut a claim of mistake or accident if asserted as a defense." <u>State v. McCary</u>, 922 S.W.2d 511, 514 (Tenn. 1996).

In order to admit such evidence, a trial court must, upon request, hold a hearing outside the jury's presence and determine that a material issue exists that does not concern conduct conforming with a character trait. <u>See</u> Tenn. R. Evid. 404(b). The trial court must also, upon request, state on the record the material issue, the ruling, and the reasons for admitting the evidence. <u>See id.</u> Additionally, the trial court must determine that the probative value of the evidence outweighs the danger of unfair prejudice. <u>Id.</u> If the trial court follows the procedure set forth in Rule 404(b), an appellate court may only disturb the trial court's decision upon a finding of an abuse of discretion. <u>See</u> <u>State v. DuBose</u>, 953 S.W.2d 649, 652 (Tenn. 1997).

It is apparent from the record that the appellant failed to object to Mr. Weeks's testimony that the appellant was seen in February at Wal-mart performing acts substantially similar to those for

which she was on trial. Further, the appellant failed to request a hearing to determine the admissibility of this evidence.[2] Further, the appellant did not object to the statements of the State's attorney regarding the February incident. It is a well-established rule that a defendant's failure to timely object and call this issue to the trial court's attention constitutes a waiver of appellate review of the issue. See Tenn. R. App. P. 36(a); State v. Hall, 8 S.W.3d 593, 603 (Tenn. 1999); State v. Thornton, 10 S.W.3d 229, 234 (Tenn. Crim. App. 1999). Accordingly, this issue is waived.

Ineffective Assistance of Counsel

Next, the appellant contends that she received ineffective assistance of counsel because her trial counsel: (1) failed to object to the introduction of prior bad act testimony; (2) called the appellant's eleven-year-old son to testify; and (3) called Paul Hughes as a character witness. The State argues that the appellant has failed to show that counsel was ineffective in these areas or that she was prejudiced by counsel's performance.

Although ineffective assistance of counsel claims may be raised on direct appeal, this court has previously cautioned that this is a practice "'fraught with peril' since it 'is virtually impossible to demonstrate prejudice as required' without an evidentiary hearing." State v. Ricky Brandon, No. M2002-00073-CCA-R3-CD, 2002 WL 31373470, at *2 (Tenn. Crim. App., at Nashville, Oct. 15, 2002) (quoting State v. Blackmon, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001)). In other words, claims of ineffective assistance of counsel are generally more appropriately raised in a petition for post-conviction relief rather than on direct appeal. See State v. Carruthers, 35 S.W.3d 516, 551 (Tenn. 2000); see also State v. Anderson, 835 S.W.2d 600, 606 (Tenn. Crim. App. 1992). Moreover, once the merits of an ineffective assistance of counsel claim have been addressed on direct appeal, the issue may not be revisited in a post-conviction proceeding. See Bobby Allen Joyner v. State, No. 03C01-9807-CR-00260, 1999 WL318832, at *2 (Tenn. Crim. App., at Knoxville, May 19, 1999), perm. app. denied, (Tenn. 1999). Thus, the better practice is to reserve the issue for a post-conviction proceeding in the event the direct appeal is unsuccessful. Brandon, 2002 WL 31373470, at *2.

On direct appeal, as in a post-conviction proceeding, the appellant is required to prove the ineffectiveness of counsel by clear and convincing evidence. State v. Burns, 6 S.W.3d 453, 461 n. 5 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). A claim of ineffective assistance of counsel presents a mixed question of law and fact subject to de novo review. Burns, 6 S.W.3d at 461. As such, the trial court's findings of fact are entitled to a presumption of correctness unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, a trial court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency

---

[2]The appellant initially objected to any testimony by Mr. Weeks on the basis that he had not been sworn. The trial court overruled that objection and allowed Mr. Weeks to testify as a rebuttal witness. The appellant made no further objections to the content of Mr. Weeks's testimony.

was prejudicial, are subject to a purely <u>de</u> <u>novo</u> review with no presumption of correctness. <u>Id.</u> When challenging the effectiveness of counsel, the appellant "bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." <u>Goad v. State</u>, 938 S.W.2d 363, 369 (Tenn. 1996) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> Because [the appellant] must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if [the appellant] makes an insufficient showing of one component.

<u>Goad</u>, 938 S.W.2d at 370.

To establish constitutionally-deficient performance, the appellant must demonstrate that counsel's representation fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687-88; <u>Burns</u>, 6 S.W.3d at 462. Specifically, the appellant must show that counsel's performance was not within "the range of competence demanded of attorneys in criminal cases." <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694; <u>Dean v. State</u>, 59 S.W.3d 663, 667 (Tenn. 2001).

In the case herein, the appellant claims that trial counsel was ineffective for failing to object to the introduction of a prior bad act, calling her eleven-year-old son to testify, and calling Paul Hughes as a character witness. We see no clear and convincing proof in the record that trial counsel was ineffective. There was no evidence presented at the hearing on the motion for new trial to support her claim that trial counsel was deficient. Moreover, the appellant has not demonstrated that she was prejudiced by counsel's performance. Blanket complaints about trial counsel's performance, without any evidence of deficient performance or resulting prejudice, cannot substantiate a claim for ineffective assistance of counsel. The appellant has failed to meet the burden of proof to show that she received ineffective assistance of counsel. This issue is without merit.

### Sentencing

Finally, the appellant contends that the trial court erred by ordering her to serve six (6) months of her eleven (11) month, twenty-nine (29) day sentence in incarceration. Specifically, the appellant argues that the decision in <u>Blakely v. Washington</u>, 542 U.S. ___, 124 S. Ct. 2531 (2004), prohibits a trial court from relying on enhancement factors "undetermined by a jury in ordering six months of incarceration for a first-time offender found guilty of a misdemeanor property offense and who was deemed suitable for probation in a pre-sentence evaluation." Further, the appellant argues that "the order of incarceration violates Tennessee sentencing principles and considerations." The

State argues that <u>Blakely</u> does not apply to misdemeanor sentencing and the trial court properly sentenced the appellant.

At the outset, we note that the Tennessee Supreme Court recently determined that <u>Blakely</u> did not announce a new rule of law and that "the Tennessee Criminal Sentencing Reform Act does not authorize a sentencing procedure which violated the Sixth Amendment right to jury trial." <u>State v. Edwin Gomez</u>, ___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *17 n.16 (Tenn. Apr. 15, 2005). Further, <u>Blakely</u>, has no impact on a trial court's sentencing determinations involving misdemeanor convictions. <u>See</u> <u>State v. Jeffrey D. Hostetter</u>, No. M2003-02839-CCA-R3-CD, 2004 WL 3044895, at *8 (Tenn. Crim. App., at Nashville, Dec. 29, 2004).

"When reviewing sentencing issues . . . , the appellate court shall conduct a <u>de novo</u> review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. § 40-35-103(5), -210(b); <u>Ashby</u>, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." <u>Ashby</u>, 823 S.W.2d at 169.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. <u>See</u> Tenn. Code Ann. § 40-35-302(b). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. <u>See</u> <u>State v. Troutman</u>, 979 S.W.2d 271, 273 (Tenn. 1998); <u>State v. Baker</u>, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumptive sentence. <u>See</u> <u>State v. Creasy</u>, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of service of the sentence. Tenn. Code Ann. § 40-35-302(a). The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). In determining the percentage of the sentence to be served in actual confinement, the court must consider the principles of sentencing and the appropriate enhancement and mitigating factors, and the court must not impose such percentages arbitrarily. Tenn. Code Ann. § 40-35-302(d).

In the case herein, the trial court sentenced the appellant immediately following trial. In sentencing the appellant to serve six (6) months of the eleven (11) month and twenty-nine (29) day sentence for theft in incarceration, the trial court commented:

> All right. For certain one inadvertent, there is $175.00 worth of property taken. The worst thing about [this] is those children were standing either watching or participating. Well, I find that the - - to some degree in each of these the State is - - on the enhancing factors the Court finds each of these, that confinement is necessary to avoid depreciating the seriousness of the offense.[3]

> In effect, she was operating a school for the instruction of theft.

> Well, this is a misdemeanor and the maximum sentence is 11 months and 29 days. It is the judgment of the Court that the defendant be confined in the penal farm of Knox County for 11 months and 29 days at 75 percent. However, on the service of six months she will be released to supervised probation.

After reviewing the evidence, we cannot conclude that the trial court exceeded the "wide latitude of flexibility" afforded him in misdemeanor sentencing. Thus, we determine that ordering the appellant to serve six (6) months of the eleven (11) month and twenty-nine (29) day sentence in incarceration is consistent with the principles of the sentencing act. This issue is without merit.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

---

[3]The State argued that the following enhancement factors applied: (1) the appellant had a previous history of criminal convictions in addition to those necessary to establish the range, Tennessee Code Annotated section 40-35-114(2), as evidenced by the testimony of Mr. Weeks; (2) the appellant was the leader in the commission of an offense involving two (2) or more criminal actors, Tennessee Code Annotated section 40-35-114(3), because the appellant had four (4) of her five (5) children with her when the offense took place and utilized her children in the commission of the offense; and (3) the appellant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense, Tennessee Code Annotated section 40-35-114(16), because the appellant exited the store with the merchandise where her husband was positioned as a people greeter. From the record, it appears that the trial court determined that all three (3) enhancement factors were present. The record supports the application of these enhancement factors.